UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PABLO PALACIO,

        Plaintiff,                                  Hon. Ellen S. Carmody

v.                                                      Case No. 1:16-cv-169

WOODLAND TURF
SPORTS CENTER, INC., et al.,

        Defendants.
_____/

## OPINION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (ECF No. 40). The parties have consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Janet T. Neff referred this case to the undersigned. For the reasons discussed herein, Defendants' motion is **granted and this action dismissed**.

## BACKGROUND

The following allegations are contained in Plaintiff's amended complaint. (ECF No. 14). Plaintiff began working for Woodland Turf Sports Center, Inc. (Woodland) in August 2006. Plaintiff discontinued this employment on a unspecified date. Plaintiff was rehired by Defendants in October 2011 and maintained this employment until April 2014. During the course of his employment, Plaintiff was paid on an hourly basis. While Plaintiff often worked more than forty (40) hours during a workweek, Defendants did not pay Plaintiff the appropriate overtime wage for such work. Defendants also "did not compensate Plaintiff his promised hourly wage for all work

performed" and "did not compensate Plaintiff for all the hours he worked." Plaintiff initiated this action on February 17, 2016, against Woodland. On May 4, 2016, Plaintiff submitted an amended complaint against Woodland as well as its owner Duane Vander Ark alleging violations of the Fair Labor Standards Act and state law. (ECF No. 14). Defendants now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence"

establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility considerations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, the plaintiff on a claim for relief or the defendant on an affirmative defense, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Thus, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of

different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.        **Fair Labor Standards Act (FLSA) Claims**

The FLSA protects employees through enterprise coverage and individual coverage. *See, e.g., Burman v. Everkept, Inc.*, 2017 WL 1150664 at *6 (W.D. Mich., Mar. 27, 2017); *Guyot v. Ramsey*, 2016 WL 2866403 at *2 (E.D. Mich., May 17, 2016). Plaintiff bears the burden to establish that his employment is covered by the FLSA through either type of coverage. *See, e.g., Mendoza v. Detail Solutions, LLC*, 911 F.Supp.2d 433, 439 (N.D. Tex. 2012) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 120 (1946)). Defendants argue that they are entitled to relief on Plaintiff's FLSA claims because Plaintiff's employment with Woodland did not come within the purview of the FLSA. For the reasons explained herein, the Court agrees.

A.        Enterprise Coverage

Enterprise coverage protects employees "who in any workweek [are] engaged in commerce[1] or in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce. . ." *Guyot*, 2016 WL WL 2866403 at *2 (quoting 29 U.S.C. § 206(a)). Enterprise coverage only extends, however, to employees of enterprises that have "an annual gross volume of sales made or business done [of] not less than $500,000. . ." *Guyot*, 2016 WL WL 2866403 at *2 (quoting 29 U.S.C. § 206(s)(1)).

---

[1] The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). In other words, "commerce" as defined by the FLSA refers to interstate, rather than intrastate, commerce. *See, e.g., Vignoli v. Clifton Apartments, Inc.*, 930 F.Supp.2d 1342, 1345 (S.D. Fla. 2013).

Defendants argue that Plaintiff cannot avail himself of enterprise coverage in this matter because Woodland, during the relevant time period, did not ever have annual gross sales of $500,00.00. In support of this argument, Defendants have submitted the following evidence. First, Defendant Vander Ark, Woodland's President, testified that from 2006 through 2016 Woodland never experienced gross revenue of $500,00 or more. (ECF No. 41-2 at PageID.215). Kenneth Kozak, accountant for Woodland, submitted an affidavit in which he asserted that from 2006 through 2016 Woodland never experienced gross revenue of $500,000 or more. (ECF 41-6 at PageID.252-54). This evidence is supported by profit and loss statements submitted by Defendants. (ECF 41-5 at PageID.240-50; ECF 57-7 at PageID.461).

Plaintiff does not dispute the accuracy of this evidence, but instead advances two arguments that such is incomplete thereby creating a genuine factual dispute. First, Plaintiff argues that Defendant Vander Ark "directed his pay-roll business 'Pegasus' to destroy business records." (ECF No. 54 at PageID.336). In support of this argument, Plaintiff cites to the deposition testimony of Defendant Vander Ark. A review of the testimony in question, however, fails to advance Plaintiff's argument. The exchange on which Plaintiff relies is as follows:

> Q: Since November 20, 2014, have you directed [Pegasus Business Services] to destroy any records?
>
> A: Regarding this case?
>
> Q: Generally.
>
> A: Yes.
>
> Q: Since November 20, 2014, have you directed them or said that they may destroy any records regarding Woodland Turf Sports complex?
>
> A: Yes.

> Q: Have you said that they may or have you directed them to destroy any records regarding customer payments?
>
> A: Regarding customer payments, no, they probably would not have gotten rid of that.
>
> Q: But you're not sure?
>
> A: I don't know.
>
> Q: Okay. Again, I assume you have a contract with this business, right?
>
> A: Yes.
>
> Q: And you told me that you would trust Gordon Dean to make decisions as a manager, a manager would customarily do, he didn't have to consult with you in regards to the hiring or firing of a referee or the noncontinuation of a contract. Would it be the same way with Pegasus, would they sometimes make decisions without asking you?
>
> A: Not very often. Yeah.
>
> Q: Did you direct them not to destroy records?
>
> A: No.

(ECF No. 54-2 at PageID.376-77).

Even affording every reasonable inference to Plaintiff, this exchange does not create a question of fact regarding whether Woodland, between 2006 and 2016, ever experienced yearly gross revenue of $500,000 or more. Vander Ark did not testify that he directed Pegasus to destroy records regarding customer payments or any other revenue sources. Moreover, Vander Ark testified that he did not know what records, if any, Pegasus may have destroyed. On the other hand, Kenneth Kozak asserts in his affidavit that, in his capacity as supervisor for the Woodland account, he "was

never instructed and did not participate in the destruction of any documents or records submitted to or received by Pegasus regarding the business activities of Woodland." (ECF No. 41-6 at PageID.252-54). Plaintiff's reliance on unfounded speculation to create a question of fact concerning Woodland's yearly gross revenues is unpersuasive. Moreover, even if the Court assumes that the exchange quoted above supports the argument that Pegasus destroyed business records concerning Woodland's gross revenues, Plaintiff has presented absolutely no evidence even suggesting that any such records were destroyed before being included in the relevant gross revenue calculations.[2]

Plaintiff next argues that Defendants' statement of Woodland's gross revenues is "incomplete" because "food and sporting equipment were sold from the premises, paid for in cash, and not included in Woodland's calculation of revenue." (ECF No. 54 at PageID.336). In support of this argument, Plaintiff relies on the deposition testimony of Gordon Dean, who managed Woodland. (ECF No. 41-3 at PageID.218; ECF No. 54 at PageID.336). Again, a review of the testimony in question fails to advance Plaintiff's cause.

Dean testified that "at various times [he] would allow people to come in and sell food." (ECF No. 54-3 at PageID.384). Dean testified that this only occurred sporadically and for very brief periods of time. (ECF No. 54-3 at PageID.384). Dean also testified that Woodland never received any payment from these endeavors. (ECF No. 54-3 at PageID.384). Dean testified that "there was never a store there at Woodland Turf Sports Center selling anything." (ECF No. 54-3 at PageID.384). Dean also testified that "for three years" he allowed "a guy out of Hudsonville" to

---

[2] Citing to Federal Rule of Civil Procedure 37, Plaintiff also argues that Defendants should be sanctioned for destroying evidence. (ECF No. 54 at PageID.337-38). This argument is rejected. First, Plaintiff has not established that Defendants destroyed evidence. Furthermore, Plaintiff never moved the Court for discovery sanctions and to the extent Plaintiff's response is interpreted as a motion for Rule 37 sanctions, such is denied as untimely.

place vending machines at Woodland. (ECF No. 54-3 at PageID.384). Dean did not, however, testify that Woodland was paid any money with respect to this arrangement. (ECF No. 54-3 at PageID.384). Moreover, while Dean testified that his son for a brief period sold snacks and candy at Woodland, Dean also testified that Woodland received no income from this activity because it was not profitable and "had nothing to do with Woodland Sports." (ECF No. 54-3 at PageID.384-86). Finally, Dean testified that he once permitted somebody sell on consignment 30-35 pairs of shoes at the Woodland facility. (ECF No. 54-3 at PageID.385). Dean testified that Woodland received fifty percent of the sales price for these shoes. (ECF No. 54-3 at PageID.385). The Court notes that there is no evidence that any of these shoes were actually purchased or that, if purchased, the sales all occurred in the same calendar year. Nevertheless, the Court will assume that 35 pairs of shoes were sold on the terms described by Dean and that such sales all occurred within the same calendar year.

This evidence simply fails to create a genuine factual dispute necessitating a trial. While there is evidence that Woodland received some revenue from the sale of 35 pairs of shoes, such is insufficient to defeat Defendants' motion. As Defendants have demonstrated, between the years 2006-2016, Woodland experienced yearly gross revenues ranging from a low of $45,506 to a high of $408,712. Thus, for the sales of the shoes in question to increase Woodland's gross revenues to the $500,000 threshold, such would have had to have generated for Woodland revenue of *at least* $91,288. Because Woodland received only fifty percent of the shoes' sale price, that means that the 35 pairs of shoes would have had to have sold for *at least* $182,576. In other words, each pair of shoes would have had to have sold for $5,216.45. Plaintiff has presented no evidence to support the conclusion that the shoes in question were valued at or sold for such unbelievable

amounts. With respect to the sporadic sales of food, snacks, and candy, there is no evidence that such activity resulted in payment of any amounts to Woodland. Moreover, even if Woodland did, or should be deemed to have, received income for these activities, as the preceding discussion illustrates, there is no evidence even suggesting that such sales produced revenues sufficient to satisfy the $500,000 gross revenue threshold to invoke enterprise coverage.

### B. Individual Coverage

To take advantage of the FLSA's individual coverage provisions, Plaintiff must establish that he was "directly and regularly engaged in interstate commerce." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011). As is "now settled," in enacting the FLSA, "Congress did *not* exercise the full scope of its authority to regulate the working conditions of employees whose activities merely affect commerce." *Steimel v. Conway Prowash, LLC*, 2016 WL 7616509 at *2 (W.D. Mich., May 31, 2016) (emphasis added); *see also*, *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943) ("[t]he test under the [FLSA], to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of commerce as to be a part of it"). Thus, to be "engaged in commerce," Plaintiff must establish that either: (1) he worked "for an instrumentality of interstate commerce"; or (2) he "regularly use[d] the instrumentalities of interstate commerce as part of [his] work duties." *Steimel*, 2016 WL 7616509 at *2. Stated differently, Plaintiff must demonstrate that he was "directly participating in the actual movement of persons or things in interstate commerce." *Ibid.*; *see also*, 29 C.F.R. § 779.103 ("[t]ypically, but not exclusively, employees engaged in interstate or foreign commerce include

employees in distributing industries, such as wholesaling or retailing, who sell, handle or otherwise work on goods moving in interstate commerce as well as workers who order, receive, pack, ship, or keep records of such goods; clerical and other workers who regularly use the mails, telephone or telegraph for interstate communication; and employees who regularly travel across State lines while working").

There is no evidence that Woodland was "an instrumentality of interstate commerce." Defendant Vander Ark testified that Woodland "doesn't produce anything," but instead simply "makes time available for kids and adults to come and recreate and play soccer and lacrosse in an indoor facility." (ECF No. 41-2 at PageID.209). In other words, Woodland was in the business of renting the use of an indoor sports facility. Kenneth Kozak asserted that "99.3% of the gross revenue of Woodland was generated by 'field rental.'" (ECF No. 41-6 at PageID.253). Gordon Dean testified that Woodland "never" rented the facility to out-of-state teams or organizations. (ECF No. 41-4 at PageID.236). This evidence clearly indicates that Woodland was not "directly participating in the actual movement of persons or things in interstate commerce." Likewise, there is no evidence that Plaintiff "regularly use[d] the instrumentalities of interstate commerce as part of [his] work duties." Plaintiff testified that his job duties primarily consisted of general cleaning and maintenance. (ECF No. 41-7 at PageID.277). Plaintiff also testified that he did not open the mail, pay invoices, or travel out of state. (ECF No. 41-7 at PageID.277).

Plaintiff's response that the occasional purchase by Woodland of cleaning supplies, maintenance materials, gasoline, and other business supplies from local merchants supports the conclusion that he was directly participating in interstate commerce is not persuasive. *See, e.g., Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1267 (11th Cir. 2006) ("a customer who

purchases an item from Home Depot is not engaged in [interstate] commerce even if Home Depot previously purchased it from out-of-state wholesalers"); *Clements v. Randolph Hotel, Inc.*, 2017 WL 2215680 at *1 (M.D. Fla., May 19, 2017) ("[a] person who buys from an in-state merchant an item that previously traveled across state lines engages in no interstate commerce even though the merchant bought the item from an out-of-state supplier"); *Jian Long Li v. Li Qin Zhao*, 35 F.Supp.3d 300, 308-09 (E.D.N.Y. 2014) (same); *Devore v. Lyons*, 2016 WL 6277810 at *9 (N.D. Tex., Oct. 25, 2016) (same). In sum, there is simply no evidence that Plaintiff was "directly participating in the actual movement of persons or things in interstate commerce." Accordingly, because there is no genuine factual dispute concerning the applicability of the FLSA to Plaintiff's claims, Defendants' motion for summary judgment is granted as to Plaintiff's FLSA claims.

**II.        State Law Claims**

Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction." Indeed, "if the federal claims are dismissed before trial. . .the state claims should be dismissed as well." *Taylor v. First of America Bank - Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also*, *Smith v. Erie County Sheriff's Department*, 603 Fed. Appx. 414, 424 (6th Cir., Feb. 26, 2015) (because supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right," federal district courts enjoy "broad discretion to decide whether to exercise jurisdiction over state law claims"). Accordingly, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims

and instead dismisses such without prejudice so that Plaintiff may pursue such in the appropriate state forum.

A Judgment consistent with this Opinion will enter.


Date: September 27, 2017                                         /s/ Ellen S. Carmody
                                                                ELLEN S. CARMODY
                                                                United States Magistrate Judge